Theresa KELLY,

v.

**ALLSTATE INSURANCE COMPANY.**

No. CIV. A. 00–CV–5583.

United States District Court,
E.D. Pennsylvania.

April 17, 2001.

Bernard M. Gross, Law Offices Bernard
M. Gross, P.C., Philadelphia, PA, for Plain-
tiff.

Marshall J. Walthew, Jennifer E. Dubas, Dechert Price & Rhoads, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This breach of contract action has been brought before the Court on the parties' cross-motions for summary judgment. For the reasons which follow, the defendant's motion shall be granted and the plaintiff's motion denied.

### Background

At some point before April, 2000, Plaintiff Theresa Kelly purchased a policy of automobile insurance from Allstate Insurance Company covering two vehicles, a 1991 Cadillac and a 1995 GMC Jimmy. On April 10, 2000, Allstate sent Ms. Kelly a bill for the premium period between February 28—August 29, 2000 which offered her the option of paying for that period in full by tendering the amount of $896.72 or paying in monthly installments of $227.68 over the next four months. That bill indicated that payment was due by April 29, 2000.

Ms. Kelly, however, failed to make any payment by that date and, on May 9, 2000, Allstate sent Ms. Kelly a Cancellation Notice for non-payment of premium advising that unless payment in the amount of $451.88 was received before May 29, 2000, her automobile insurance policy would be cancelled by 12:01 a.m. on that date. On May 11, 2000, Plaintiff mailed a check to defendant in the amount of $227.68 which was received on May 16, 2000. That same date, Allstate mailed a Special Notice to Plaintiff advising her that while it had received her payment and credited it toward her policy, unless an additional payment of $227.68 was received before 12:01 a.m. on May 29, 2000, the policy would terminate according to the Cancellation Notice sent previously.

Given that Allstate did not receive another $227.68 payment from Plaintiff until June 11, 2000, it advised her by Reinstatement Notice dated June 13, 2000 that while her policy had been cancelled at 12:01 a.m. on May 29, it had been reinstated at 12:01 a.m. on June 11, 2000.

On June 9, 2000, Plaintiff was involved in an automobile accident in which she sustained personal injuries. When Plaintiff sought to recover her medical expenses under the medical payments portion of her automobile insurance policy, Defendant denied the claim on the grounds that Plaintiff's losses were uncovered since the accident had occurred during the period when the policy had lapsed. Plaintiff thereafter filed this action seeking damages for breach of contract, violation of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 P.S. § 1701, *et. seq.* and for bad faith under 42 Pa.C.S. § 8371.

### Summary Judgment Standards

The standards governing the disposition of motions for summary judgment are outlined in Fed.R.Civ.P. 56. That rule, reads, in relevant part at subsection (c):

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to deter-

mine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa.1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Gyda v. Temple University,* 2000 WL 675722, at * 4 (E.D.Pa.2000), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### *Discussion*

Pennsylvania law is clear that an insurer may cancel a policy of automobile insurance for nonpayment of premium. 40 P.S. § 991.2004(1). Pennsylvania law also clearly prescribes the procedure for notifying an insured of the cancellation of an automobile insurance policy in 40 P.S. § 991.2006. That statute provides:

A cancellation or refusal to renew by an insurer of a policy of automobile insurance shall not be effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew. The notice shall:

(1) Be in a form acceptable to the Insurance Commissioner.

(2) State the date, not less than sixty (60) days after the date of the mailing or delivery, on which cancellation or refusal to renew shall become effective. When the policy is being cancelled or not renewed for the reasons set forth in section 2004(1) and (2), however, the effective date may be fifteen (15) days from the date of mailing or delivery.

(3) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(4) Advise the insured of his right to request in writing, within thirty (30) days of the receipt of the notice of cancellation or intention not to renew as stated in the notice of cancellation or of intention not to renew, that the Insurance Commissioner review the action of the insurer.

(5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the automobile assigned risk plan.

(6) Advise the insured that he must obtain compulsory automobile insurance coverage if he operates or registers a motor vehicle in this Commonwealth, that the insurer is notifying the Department of Transportation that the insurance is being cancelled or not renewed and that the insured must notify the Department of Transportation that he has replaced said coverage.

(7) Clearly state that when coverage is to be terminated due to non-response to a citation imposed under 75 Pa.C.S. § 1533 (relating to suspension of operating privilege for failure to respond to citation) or nonpayment of a fine or penalty imposed under that section coverage shall not terminate if the insured provides the insurer with proof that the insured has responded to all citations and paid all fines and penalties and that he has done so on or before the termination date of the policy.

In this case, Allstate sent Plaintiff a notice which was plainly labeled an "AUTOMOBILE CANCELLATION NOTICE FOR NON–PAYMENT OF PREMIUM" on May 9, 2000. This notice clearly set out in bold-faced type that the minimum amount then due and owing to be paid before the cancellation date and time of 12:01 A.M. on May 29, 2000 was $451.86 and gave the plaintiff the option of paying by credit card or check by phone. The notice went on to recite the following **Cancellation Information:**

The insurance afforded under your policy will be cancelled if we not *receive* the **Minimum Amount Due** before the **Cancel Date and Time of:** 12:01 a.m. Standard Time on May 29, 2000. If you wish your coverage to stop before the date and time, you should contact your agent or producer of record immediately, as any unpaid premium amounts may be referred to collections.

If your payment is by check, draft or other remittance which is not honored upon presentation to your financial institution, any notice we may issue which waives this cancellation notice or reinstates coverage is of no effect, and your policy will cancel on the date and time as shown.

The **Minimum Amount Due** includes a past due amount of 224.18.

Our records indicate we did not receive a payment from you last month. If you've made a payment since this notice was issued and the amount of that payment was less than the **Minimum Amount Due** shown above, we still need to receive the difference before the **Cancel Date and Time** to prevent your policy from canceling.

If you have any questions about this cancellation notice, please contact your agent or producer of record as soon as possible.

**PENNSYLVANIA LAW REQUIRES THAT YOU BE GIVEN A COPY OF THIS NOTICE. READ IT CAREFULLY. YOU HAVE THE RIGHT TO REQUEST THE PENNSYLVANIA INSURANCE COMMISSIONER TO REVIEW THIS ACTION BY ALLSTATE. TO DO THIS, SIGN AND SEND A COPY OF THIS FORM WITHIN THIRTY DAYS TO THE PENNSYLVANIA INSURANCE COMMISSIONER AT ONE OF THE FOLLOWING OFFICES: ....**

IF YOU HAVE TROUBLE GETTING NEW INSURANCE, ANY INSURANCE AGENT/OR BROKER MAY GET THIS INSURANCE FOR YOU THROUGH THE PENNSYLVANIA FAIR PLAN OR THROUGH THE PENNSYLVANIA AUTOMOBILE INSURANCE PLAN WHICH HANDLES ASSIGNED RISKS IF YOU ARE ELIGIBLE FOR IT.

On the reverse side, Allstate informed Plaintiff that **"A Copy of This Notice Was Sent To** the Union Bank and Trust Company of Eastern Pennsylvania at 52 W. Broad Street, Bethlehem, PA and the Chase Insurance Service Center at P.O. Box 29082 in Phoenix, AZ." Finally, Plaintiff was advised that:

> You must obtain compulsory automobile insurance if you operate or register a motor vehicle in the Commonwealth. If you purchase insurance through another insurer, you must notice the Department of Transportation ... of your replacement of this policy. The Pennsylvania Department of Transportation will be noticed that your auto policy is being cancelled.

On May 16, 2000, Allstate sent the plaintiff a second notice, entitled **Automobile Insurance Special Notice**, which gave her the following under the heading of *Important Information:*

> Please be advised that your cancellation effective date is/was 12:01 a.m. on May 29, 2000. Your payment of $227.68 was received on May 16, 2000. This amount has been applied to your policy; however, as of the date of this notice, we still have not received the full Minimum Amount Due. Please note that the Cancellation Notice previously sent to you on May 9, 2000 will be enforced unless the full Minimum Amount Due is received before 12:01 a.m. on May 29, 2000.
>
> In order to avoid having your policy cancel, we must receive an additional payment of $227.68 before your cancellation effective date which is/was 12:01 a.m. on May 29, 2000.
>
> The amount due includes a payment fee of $3.50.
>
> If you have any questions, please contact your agent.

In reviewing the May 9, 2000 Notice, we find it to be compliant in all respects with the requirements of Pennsylvania state law governing the cancellation or non-renewal of automobile insurance policies. Given that the proposed cancellation was for non-payment of premium requiring just fifteen (15) days' advance notice, we likewise find that this notice was timely in that it gave Plaintiff twenty (20) days' notice that she had to pay the sum of $451.68 before May 29th to keep her auto insurance in force.

■ The plaintiff argues that her automobile insurance policy could only be cancelled for nonpayment of a premium if a cancellation notice is sent *after* the premium becomes past due, and the notice is sent at least fifteen days before the effective cancellation date. Ms. Kelly reasons that since she did pay the $227.68 installment due on April 29, 2000 on May 11, 2000, her policy could not be cancelled for non-payment of premium until *after* she failed to pay the installment due on May 29, 2000 and hence the earliest date that Allstate could have sent a cancellation notice based on the non-payment of that installment was May 30th with a cancellation effective date of June 14, 2000. Plaintiff thus contends that as her auto insurance was not properly cancelled, she is entitled to the entry of judgment in her favor as a matter of law. We disagree.

For one, in advancing her argument, Plaintiff relies upon the notice requirements set forth in 40 P.S. § 3403 (governing the cancellation of property and casualty insurance policies). While Plaintiff's argument may have some merit were she seeking to recover benefits under a property and casualty policy which has different cancellation requirements, it holds no water here given that she is endeavoring to obtain the payment of medical expenses under an auto insurance policy.

██ What's more, the payment of premiums is said to be the very essence of an insurance contract; premium payments are a condition precedent to or at least concurrent with the assuming of any liability by an insurance company. *In re Moran*, 249 B.R. 90, 96 (Bkrcy.E.D.Pa.2000). Acceptance of a partial payment for premiums due does not operate as a waiver of the insurance company's right of forfeiture for lapse of premiums and an insurer cannot be compelled to apply a dividend less than a full premium so as to extend the term of the policy proportionately. *Holland v. Federal Kemper Insurance Co.*, 381 Pa.Super. 249, 252, 553 A.2d 450, 451 (1989); *Bush v. Prudential Insurance Co. of America*, 52 F.Supp. 52, 53 (E.D.Pa. 1943), *aff'd* 150 F.3d 631 (3rd Cir.1945). An insurance company may therefore cancel an insured's policy at any time for lack of timely payment until such time as the balance is paid in full. *Holland, supra.*

██ It is also established in Pennsylvania law that the protecting power of the policy is suspended until the full assessment is paid and no recovery can be had for a loss sustained during the continuance of such default. *Schifalacqua v. CNA Insurance Co.*, 567 F.2d 1255, 1257 (3rd Cir. 1977), citing *Lycoming Fire Insurance Co. v. Rought*, 97 Pa. 415, 418 (1881). Where a premium payment is received after the loss, the acceptance of it merely reinstates the policy as of the date of its receipt. *Id.*, citing *Panizzi v. State Farm Mutual Automobile Insurance Co.*, 386 F.2d 600, 603–605 (3rd Cir.1967) and *Cooper v. Belt Automobile Indemnity Association*, 79 Pa.Super. 479, 482 (1922).

Here, when Plaintiff failed to make an installment payment of $227.68 by 12:01 a.m. on May 29, 2000, Defendant could have and did properly cancel the auto insurance policy which she had on her two vehicles. Given that Ms. Kelly did not make her $227.68 May installment payment until June 11, 2000, Allstate did not reinstate her policy until that date. We therefore find that when Ms. Kelly was involved in the automobile accident on June 9, 2000, the Allstate policy was not in effect and Allstate therefore does not owe her any benefits under Policy # 0 77 250979 as the result of that accident. Summary judgment is therefore appropriately entered in favor of the defendant insurer and against the plaintiff. *In accord, Fasanya v. Allstate Indemnity Co.*, 2001 WL 4995 (E.D.Pa.2000).[1]

██ In addition, we find that defendant is also entitled to judgment in its favor as a matter of law on the plaintiff's claim for bad faith. To be sure, in order to recover on a claim of bad faith, a plaintiff must demonstrate by clear and convincing evidence that the insurer did not have a reasonable basis for denying a claim and that it knowingly or recklessly disregarded the lack of such reasonable basis. *Seckel v. Minnesota Mutual Life Insurance Co.*, 2000 WL 233246 (E.D.Pa. 2000); *Adamski v. Allstate Insurance Co.*, 738 A.2d 1033, 1036 (Pa.Super.1999); *Junghan v. Workmen's Compensation Appeal Board*, 143 Pa.Cmwlth. 624, 630, 600 A.2d 633, 636 (1991); *Department of Transportation v. Brayman Construction Corp.*, 99 Pa. Cmwlth. 373, 513 A.2d 562 (1986). A mere denial that the item was received is not sufficient to overcome the presumption that the item was received. *Donegal Mutual Insurance Co. v. Pennsylvania Department of Insurance*, 694 A.2d 391, 394 (Pa.Cmwlth.1997).

---

1. In so holding, we reject Plaintiff's argument that she never received the notice attached to Defendant's motion for summary judgment as Exhibit "B". Indeed, under the "mailbox rule," when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed. *See, Shee-*

*v. Nationwide Mutual Fire Insurance Co.*, 949 F.Supp. 353, 356 (E.D.Pa.1997). In this case, Allstate had a reasonable basis to deny the plaintiff's claim given that its records reflected that plaintiff failed to make her premium payments when due and that it had sent out the appropriate notices warning that the plaintiff's policy would be cancelled on May 29, 2000 if the full amount of the April and May, 2000 installments were not received by 12:01 a.m. on that date. Defendant therefore had no obligation to provide coverage to the plaintiff on the date of her accident and the claim for bad faith fails.

For all of the above-recited reasons, the defendant's motion for summary judgment shall be granted and the plaintiff's motion denied.

An order follows.

### ORDER

AND NOW, this day of April, 2001, upon consideration of the Parties' Cross–Motions for Summary Judgment, it is hereby ORDERED that the Defendant's Motion for Summary Judgment is GRANTED, the Plaintiff's Motion for Summary Judgment is DENIED and Judgment as a matter of law is hereby entered in favor of the defendant Allstate Insurance Company on all counts of the Plaintiff's complaint.